**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RALPHIELL BRAUNSKILL,                                    Case No. 1:24-cv-140

          Plaintiff,                                    McFarland, J.
                                                        Bowman, M.J.

     v.

AGENT DANIELLE SMITH, et al.,

          Defendants.

**REPORT AND RECOMMENDATION**

On March 18, 2024, Plaintiff initiated this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983. The case is presently before the undersigned on Defendants' motion to dismiss. For the reasons that follow, the undersigned recommends that Defendants' motion to dismiss be DENIED, but that the claims in the amended complaint be DISMISSED *sua sponte* under the PLRA.

### I.    Background

On June 11, 2024, the undersigned filed a Report and Recommendation ("R&R") that recommended the *sua sponte* dismissal of most claims and defendants on initial screening under provisions of the Prison Litigation Reform Act of 1995 ("PLRA"). *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). The same R&R recommended that a single Fourth Amendment claim against Defendants Smith and Taylor in their individual capacities be permitted to proceed for further factual development.[1] In the latter claim,

---

[1] The original R&R noted that the *sua sponte* recommendation on initial screening did not foreclose the possibility that Plaintiff's claims might still be subject to dismissal based on "the applicable statute of limitations and/or under *Heck v. Humphrey*, 512 U.S. 477 (1994)." (Doc. 4, PageID 46, n.2).

Plaintiff alleged that on or about February 26, 2022 through March 10, 2022, defendant agents Smith and Taylor subjected him to prolonged detention without probable cause by their "refusal to comply with the demand for 48 hour probable cause demand in accordance with the 4th amendment" after Plaintiff's arrest." (Doc. 3 at PageID 39, 41). Plaintiff further alleged that the defendants improperly obtained "acquisition of the lab report during plaintiff's unlawful arrest, which subsequently led to plaintiff's indictment & conviction, which under ordinary circumstances would have been excluded." (*Id.*).

The presiding district judge adopted the R&R as the opinion of the Court, overruling two sets of objections filed by Plaintiff. (Doc. 9). Plaintiff appealed the dismissal to the Sixth Circuit, which dismissed for lack of appellate jurisdiction. *Braunskill v. Smith*, No. 24-3916, 2024 WL 5344454 (Dec. 12, 2024).

On August 12, 2024, Plaintiff filed an "Amended Complaint." (Doc. 7). Because Plaintiff filed his amended complaint shortly before the Court's *sua sponte* dismissal of most of the claims in his original complaint, the amended complaint has yet to be screened under the PLRA.

After the Court's dismissal of all claims and Defendants except for Defendants Smith and Taylor, service of the original complaint was executed on those two Defendants alone. On September 26, 2024, Defendants Smith and Taylor moved to dismiss. (Doc. 12). Plaintiff filed a response in opposition to Defendants' motion, to which Defendants filed a reply. (Docs. 16, 17).

## II.   Analysis

### A.  Defendants' Motion to Dismiss

Defendant's motion to dismiss is based solely on a statute of limitations defense, and references the allegations of both Plaintiff's original and amended complaints. In both

pleadings, Plaintiff alleges that the actions that resulted in his unlawful detention in violation of the Fourth Amendment occurred from February 26, 2022 through March 10, 2022.

Because the elements of false imprisonment and false arrest overlap, the Supreme Court generally refers to both claims as "false imprisonment." *Wallace v. Kato*, 549 U.S. 384, 389, 127 S.Ct. 1091 (2007). A claim for false imprisonment is a claim of detention without adequate legal process, such as arrest and detention without a warrant or without a prompt probable cause hearing. The period of false imprisonment ends once the plaintiff is detained pursuant to a legal process. *See generally*, *id.*, 127 S. Ct. 1091, 1095-96, 548 U.S. 384, 388-90. Here, that date was either February 28, 2022 (when Plaintiff was arrested and arraigned in Municipal Court) or March 10, 2022 (the date that Plaintiff was indicted on drug charges in related Clermont County Common Pleas Case No. 2022 CR 235).[2] Because the instant federal case was not initiated until Plaintiff's *in forma pauperis* application and tendered complaint were filed on March 18, 2024, Defendants argue that Plaintiff's complaint was filed after the applicable two-year statute of limitations that applies to § 1983 claims filed in Ohio. *See*, *generally*, *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989); *Lovelace v. O'Hara*, 985 F.2d 847, 852 (6th Cir. 1993).

In response, Plaintiff invokes the "prison mailbox rule," a rule that "was created to prevent pro se prisoners from being penalized by any delays in filing caused by the prison mail system." *Cretacci v. Call*, 988 F.3d 860, 867 (6th Cir. 2021). Under that rule, a pleading by a prisoner is deemed to be "filed" when the prisoner transmits the document to prison officials for filing. *See Richard v. Ray*, 290 F.3d. 810, 813 (6th Cir. 2002) (per

---

[2]Defendants' motion points out that Plaintiff was arraigned on the indictment in Case No. 2022 CR 235, and was given bond on March 11, 2022.

curiam); *Houston v. Lack*, 108 S.Ct. 2379, 2385, 487 U.S. 266, 275 (1988) (Reasoning that "reference to prison mail logs will generally be a straightforward inquiry, making … the date the *pro se* prisoner delivers the notice to prison authorities for mailing … a bright-line rule, not an uncertain one."). In the case presented, Plaintiff asserts that he presented his civil complaint to prison officials for mailing on February 28, 2024, which arguably would make his claim for "prolonged detention" timely filed within two years of the date that his claim accrued.[3] In support of that assertion, he points to a "cash statement" from his prison account that reflects two withdrawals for postage on February 29, 2024. (Doc. 16, PageID 146).

Defendants urge this Court to reject Plaintiff's assertion, pointing out that Plaintiff's original complaint was not signed "under penalty of perjury." *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (using date petition was signed "under penalty of perjury" as the operative date for the mailbox rule). Because Plaintiff did not submit a verified complaint "under penalty of perjury," Defendants argue that he may not rely on the prison mailbox rule. But neither *Towns* nor any other controlling case law mandate that proof of delivery of mail to prison officials "under penalty of perjury" is required for the rule to apply.

In the case presented, the pages of Plaintiff's *in forma pauperis* application and the pages of his complaint form appear to have been intermingled. (*See* Doc. 1, PageID 9-12 (pages of complaint form)). The last page of the complaint form, on which the litigant is asked to state his claims for "Relief" and sign and date the complaint form, appears in the midst of Plaintiff's *in forma pauperis* application. (*See* Doc. 1, PageID 9).

_____

[3]Although Plaintiff's allegations are somewhat ambiguous, the undersigned infers that Plaintiff may be alleging he was wrongfully detained without probable cause until March 10, 2022 - the date that coincides with his indictment in No. 2022 CR 235.

Notwithstanding the fact that Plaintiff did not sign "under penalty of perjury," the date of Plaintiff's signature on both the *in forma pauperis* application and the complaint form is February 26, 2024. (*See id.*, PageID 3, 9).

But February 26 is not the operative date in this case, because Plaintiff included United States Marshal forms (USM 285) with his complaint that were not signed and dated until February 28, 2024. (*See* Doc. 1-4). The withdrawal from Plaintiff's prison account for postage did not occur until the following day, February 29, 2024. (Doc. 16, PageID 146). Finally, the record includes scanned copies of the envelopes that contained Plaintiff's pleading and associated documents, postmarked March 1, 2024 – the date that prison officials are presumed to physically have placed Plaintiff's complaint in the mail. Based on this body of evidence, the undersigned concludes that Plaintiff is entitled to a presumption that he submitted a completed complaint form along with the requisite *in forma pauperis* application and USM 285 forms to prison officials on February 28, 2022. Therefore, Defendants' motion to dismiss Plaintiff's amended complaint in its entirety on statute of limitations grounds should be DENIED.

## B. PLRA Screening of the First Amended Complaint

On August 12, 2024, pursuant to Rule 15(a), Fed. R. Civ. P., Plaintiff filed a 30-page "verified" amended complaint that is more than three times the length of his original complaint.[4] (Doc. 7). To the extent that the claims in the amended complaint "relate back" to the filing date of the original pleading, Plaintiff's amended complaint survives the Defendants' motion to dismiss. Like the original pleading, however, the amended

---

[4]On one of the pages of the amended complaint (Doc. 7, PageID 72), Plaintiff attests to the amended complaint "under penalty of perjury," and certifies that he placed his amended complaint in the prison mail on 7/31/2024. But on another page of the same pleading, (*id.*, PageID 90), Plaintiff includes a second statement certifying that he is placing his amended complaint in the mail on 8/5/2024. The envelopes containing the amended pleading are postmarked August 10, 2024.

complaint is subject to initial screening under the PLRA. Having now subjected the amended complaint to the requisite screening standards of the PLRA, the undersigned recommends dismissal of all claims.

### 1. Judicial Notice of Three Related State Court Proceedings[5]

Plaintiff's amended complaint closely relates to three 2022 criminal cases filed in Clermont County. To provide the necessary context for Plaintiff's allegations in this Court, the undersigned takes judicial notice of the public record of those related state court proceedings.[6]

The first related case is Clermont County Municipal Court No. 2022 CR A 00546. The state court docket sheet reflects that on February 28, 2022, following the execution of a search warrant on February 26, 2022, Plaintiff was charged with drug trafficking/sell or offer, a first degree felony, by Officer Smith and/or the Union Township Police Department. The state record reflects that on the same date, a complaint and/or affidavit was filed, a warrant to arrest was issued, and a bond hearing was scheduled. The docket sheet further reflects that on February 28, 2022, a judgment entry setting bond, an entry on arraignment, a probable cause checklist signed by the Clerk/Deputy Clerk B. Perkins, and a subpoena were filed. A preliminary hearing was then scheduled for March 10, 2022. On March 1, the February 28 warrant to arrest was returned, confirming an arrest date of

---

[5] State court proceedings were viewed at https://www.clermontclerk.org/case_access.html. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

[6] Plaintiff also refers to other criminal cases filed against him over the past decade, and at least one appeal of a prior conviction. *See, e.g.*, 2014 CR 000687 (trafficking in heroin, convicted 6/27/16); 2016 CR 000446 (trafficking in heroin, convicted 10/18/16); 2016 CR 000007 (trafficking in heroin/cocaine, dismissed 8/8/2016); *State v. Braunskill*, 2018 -Ohio- 3738, ¶ 25, 2018 WL 4440561, at *3 (Ohio App. 12 Dist., 2018) (affirming trial court's decision to deny Braunskill's untimely petition for postconviction relief seeking resentencing on drug trafficking charges).

February 28.[7] However, on March 10, 2022, Municipal Court No. 2022 CR A 546 was dismissed.

The dismissal date of the Municipal Court case coincides with the date of Plaintiff's criminal indictment in the second related case, Clermont County Court of Common Pleas No. 2022 CR 235. On February 26, 2022, Plaintiff was charged in that case by the Clermont County Sheriff with four felony offenses: aggravated trafficking in drugs (first degree), aggravated possession of drugs (first degree), trafficking in fentanyl-related compounds (second degree), and possession of fentanyl-related compound (second degree). The indictment was filed, and a warrant on the indictment was issued on March 10, 2022. Plaintiff was appointed counsel and was arraigned on March 11, 2022. Defense counsel subsequently filed a motion to suppress evidence, which was denied on January 19, 2023. The final disposition of 2022 CR 235 reflects that Plaintiff was found guilty/no contest on January 25, 2023. He was convicted and sentenced for two lesser included offenses: aggravated trafficking in drugs (third degree felony) and trafficking in fentanyl-related compounds (third degree felony), with the remaining two charges dismissed.

The third related criminal proceeding is Clermont County Common Pleas No. 2022 CR 450. On January 2, 2022, Braunskill was charged in that case with six offenses: aggravated trafficking in drugs (second degree felony); aggravated possession of drugs (second degree felony); trafficking in fentanyl-related compounds (first degree felony); possession of fentanyl-related compound (first degree felony); trafficking in heroin (second degree felony), and possession of cocaine/heroin (second degree felony). However, a warrant on an indictment was not issued until May 19, 2022. On October 6,

---

[7]The arrest warrant return was signed by Officer Blankenship, an individual who is not identified as a defendant herein.

2022, defense counsel moved to suppress evidence in that case. The rulings on the motions to suppress in 2022 CR 235 and 2022 CR 450 were issued on the same day, January 19, 2023. But unlike in 2022 CR 235, the motion to suppress in 2022 CR 450 was granted in part and denied in part. On January 25, 2023 - the date of his conviction in 2022 CR 235 - Plaintiff was also convicted in 2022 CR 450 on two lesser-included offenses: aggravated trafficking in drugs (third degree felony) and trafficking in heroin (third degree felony) with the remaining four charges dismissed.

### 2. The Amended Complaint is Insufficient to Resurrect Dismissed Claims

Prior to reviewing Plaintiff's new allegations against Defendants Smith and Taylor, the undersigned considers Plaintiff's attempts to resurrect claims and defendants previously found subject to dismissal in his original complaint. The caption of the First Amended Complaint names "Agent Danielle Smith et al.", Jane Doe and John Doe, and Matthew Faris. (Doc. 7, PageID 67). Within the body of his amended complaint, however, Plaintiff includes allegations against multiple previously dismissed Defendants, including Clermont County, the Clermont County Sheriff Department, the Union Township Police Department, the Clermont County Public Defender's Office, Matthew Farris, and unidentified defendants. Plaintiff also includes new allegations against Judge Anthony Brock.[8]

For the reasons stated in the prior R&R, Plaintiff's amended allegations remain insufficient as a matter of law to state any claim against any of the previously dismissed Defendants. In the interests of judicial economy, the undersigned incorporates her prior analysis:

---

[8]The prior R&R inadvertently misspelled the judge's surname as "Broke."

8

[A]lthough plaintiff includes Jane and John Doe defendants in the caption of the complaint, he includes no factual allegations against any unidentified defendants in the body of the complaint aside from his conclusory allegation that defendants initiated an investigation against him. (*See* Doc. 1, Complaint at PageID 17). Plaintiff's "naked assertion[s] devoid of further factual enhancement" fail to meet the basic pleading standard under *Twombly*. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Accordingly, plaintiff has pled insufficient factual content to state a claim for relief against the unidentified defendants. *See Twombly*, 550 U.S. at 5.

To the extent that plaintiff claims that all defendants conspired against him, it is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus*, 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987)) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity"). Here, construing the complaint liberally, plaintiff's factual allegations are insufficient to suggest that the defendants shared a conspiratorial objective or otherwise planned together to deprive him of a constitutionally protected right.

(Doc. 4, PageID 46-47).

In his objections to the prior R&R, Plaintiff sought to add new allegations that Defendants John and Jane Doe were members of the Clermont County Sheriff's Department and the Union Township Police Department who assisted in Plaintiff's arrest. Judge McFarland overruled those objections because Plaintiff had failed to include the allegations in his original complaint (Doc. 9, PageID 100).

In the amended complaint, Plaintiff more clearly alleges that John and Jane Doe were members of the two referenced law enforcement agencies. But Plaintiff's allegations remain too vague to state any claim. Plaintiff broadly alleges that Defendants Smith and Taylor and "unknown members" of both the Clermont County sheriff's Department and the Union Township Police Department "conspired to arrest Plaintiff without probable cause & neutral determination thereof, with intent to violate Plaintiff's constitutional rights

for being uncooperative in drug-related operation." (Doc 7, PageID 69). Apart from identifying John and Jane Doe as actors associated with law enforcement agencies,[9] Plaintiff's allegations are entirely conclusory. In short, Plaintiff fails to state any claim because he does not include sufficient factual details alleging individual actions taken by either John or Jane Doe that would subject them to liability. "It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." *Williams v. Hodge*, No. 3:08-cv-387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)). As previously explained, Plaintiff's conclusory allegations that John and Jane Doe engaged in a "conspiracy" to violate Plaintiff's constitutional rights are insufficient. (Doc. 4, PageID 46-47).

Plaintiff's re-asserted allegations against his former defense attorney similarly fail to state a claim. Again, the undersigned incorporates her prior analysis:

> Plaintiff's complaint fails to state a claim for relief under § 1983 against defendant Matthew Ferris, his defense attorney in his state criminal case, because Ferris is not a state actor. In order to maintain an action under § 1983, plaintiff must allege that the person engaging in the conduct complained of was acting under color of state law and that this conduct deprived plaintiff of some right secured by the Constitution or laws of the United States. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986)). As a lawyer representing a client, defendant Ferris was not a state actor within the meaning of § 1983. *See Polk County v. Dodson*, 454 U.S. 312 (1981) (holding that public defender does not act under color of state law for purposes of § 1983); *McCord v. Bailey*, 636 F.2d 606, 613 (D.C. Cir. 1979) (applying *Polk County* to retained criminal lawyers). *See also Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998).

---

[9]Although the caption of his complaint identifies a single John and Jane Doe (two individuals), Plaintiff's reference to multitudes of "unknown members" of the respective agencies underscores the conclusory nature of his allegations.

(Doc. 4, PageID 47). As Judge McFarland also explained:

> Plaintiff's claims against Farris address his purported failure to provide an affirmative defense and seek to suppress evidence. (*See* Compl., Doc. 3, Pg. ID 40.) These are the sort of traditional functions of a public defender that do not give rise to § 1983 liability.

(Doc. 9, PageID 102).

Plaintiff's re-alleged claims against Judge Brock remain foreclosed under the doctrine of absolute judicial immunity.(*See* Doc. 4, PageID 47). New allegations that Judge Brock sentenced Plaintiff under "false pretenses" based on a false report from the Adult Probation Authority[10] do not change the fact that Plaintiff is attacking Judge Brock's judicial rulings. (*See*, *e.g.*, Doc. 7, PageID 82, 85-86). Likewise, Plaintiff's re-alleged claims remain foreclosed against the Clermont County Police Department, the Union Township Police Department, and the Clermont County Public Defender's Office. (*See* Doc. 4, PageID 47-48, explaining that none of those entities are capable of being sued under Ohio law).

Last, Plaintiff's amended complaint continues to fail to state a claim against Clermont County and the defendants in their official capacities.

> Plaintiff has failed to allege sufficient facts to plausibly suggest that his rights were violated by a custom or policy as would be required to hold defendants liable in an official capacity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Plaintiff's conclusory allegations that Clermont County "fail[ed] to not remain indifferent on a policy of not disclosing probable cause request & determinations to attorneys & the courts" and "improper training" are the type of legal conclusion couched as a factual allegation that do not pass muster under *Twombly* or *Iqbal*. (Doc. 1 at PageID 18). Plaintiff's assertions are too conclusory to permit the Court to draw the reasonable inference that the Clermont County is liable for the specific instances of misconduct alleged in the complaint. *See Twombly*, 550 U.S. at 556.

---

[10]While difficult to decipher, some allegations appear to relate to a report of the Adult Probation Authority that allegedly contained a false statement concerning Plaintiff's compliance with a "community control" provision imposed in connection with a 2014 criminal case. (*See* Doc. 7, PageID 86).

(Doc. 4, PageID 48 –49, internal footnotes omitted). As Judge McFarland stated:

> [M]any of these allegations concern individual misconduct by various government officials-such as Judge Anthony Brock and law enforcement officer Ryan Poling-as opposed conduct "attributable to the municipality."…*see also D'Ambrosia v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014). Furthermore, as the Magistrate Judge points out, Plaintiff's allegations that Clermont County improperly trains police and remains indifferent to probable cause requests are too conclusory to properly state a claim for relief under *Monell.* (See Report, Doc. 4, Pg. Id 48-49); *see also Buetenmiller v. Macomb County Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (noting that conclusory allegations of unconstitutional policies and the failure to reference *Monell* in the complaint support dismissal).

(Doc. 9, PageID 101).

In his amended complaint, Plaintiff has added new allegations that assert various "policies" of "indifference" held by the County, presumably in an attempt to solidify a *Monell* claim. Plaintiff's amended allegations largely continue to fail to state a claim because they remain entirely conclusory and/or allege only individual misconduct rather than conduct attributable to Clermont County. (*See*, *e.g.*, Doc. 7, PageID 89, alleging that the county routinely engages in "prolonged detention without probable cause determination" and "indicts & precludes an adverse ruling from the preliminary hearing."). In a separate case, this Court recently dismissed the Plaintiff's similar conclusory allegations against Brown County. *Accord Braunskill v. Brown Cnty. Sheriff Dept*, Case No. 1:24-cv-374-JPH-PBS, 2024 WL 4532809, at *3 (S.D. Ohio, Oct. 21, 2024) (rejecting conclusory claim that Brown County has "a long standing policy of indifference to the deprivation of citizen's rights.").

But two newly alleged "policies" merit brief further discussion. First, Plaintiff alleges that Clermont County has a "policy" of failing to return cell phones despite judicial warrants that reflect that the cell phones or other property are to be secured by the County only through final disposition of the underlying criminal proceeding. Plaintiff alleges that the

County does not return the property after the state's custodial interest has ended at sentencing. (Doc. 7, PageID 84-85). Plaintiff alleges that he "incurred a forfeiture" of some unidentified property in Clermont County Common Pleas No. 2022 CR 450, without a forfeiture hearing, and despite "the express command from the magistrate in the search warrant stating all evidence is to be secured until the final resolution, ending the state's custodial interest at sentencing." (*Id.*, PageID 84).

Plaintiff does not identify an actual policy that is responsible. He simply complains that he personally was not given a forfeiture hearing in his particular case, and attempts to generalize it as a policy of not returning seized cell phones. Technically, Plaintiff does not even identify the nature of the property that he alleges was forfeited by virtue of its retention - whether a cell phone or something else. Similar to allegations of other "policies," Plaintiff's allegations are extremely conclusory. It appears he is attempting to establish the existence of the alleged county-wide "policy" based solely on some sort of retention of his personal property after sentencing in his case. He specifically alleges that the county is on "notice" of the alleged "policy" because of his lawsuit. But the very notion that the County became aware of its alleged "policy" by being put on notice by Plaintiff undermines his conclusory allegation that a County-wide policy exists. (*See* Doc. 7, PageID 84).

The second policy included in the amended complaint that requires further discussion is a reiteration of allegations previously made for the first time in Plaintiff's objections to the prior R&R. In those objections, Plaintiff alleged that the County had violated Plaintiff's right to access the courts. Judge McFarland overruled Plaintiff's objections on grounds that he had failed to include any such claim in his original complaint. (Doc. 9 , PageID 101). In his amended complaint, Plaintiff alleges that

13

"Clermont County fails to provide a law library in absence of legal representation." (Doc. 7, PageID 83). In support of his new claim, Plaintiff relies on *Bounds v. Smith*, 430 U.S. 817 (1977).

However, "[b]ecause *Bounds* did not create an abstract freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 418 U.S. 343, 351 (1996). Plaintiff must instead demonstrate that the challenged conduct has hindered or is presently hindering, his efforts to pursue a nonfrivolous legal claim. *Id.* at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). In addition, when bringing a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he predicate claim (must) be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* In other words, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405-406 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 & n. 3).

Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result alleged inadequacies of the Clermont County facilities. Although Plaintiff alleges in conclusory fashion that he was "unable to

14

adequately litigate habeas corpus relief" (Doc. 7, PageID 89), the complaint includes no factual allegations to plausibly suggest that he was in fact prevented from filing a habeas corpus petition or seeking other relief in any court.[11] Moreover, the complaint is devoid of factual allegations suggesting that any defendant's conduct—much less a County policy—impacted a non-frivolous cause of action or otherwise deprived him of access to the courts. Without such allegations, Plaintiff fails to state a claim for relief for a denial of access to the courts under the First Amendment.

### 3. Other New Allegations Fail to State New Claims

In addition to Plaintiff's expanded allegations against previously dismissed defendants, Plaintiff includes allegations in his lengthy amended complaint that relate to events dating to between 2015 and 2021. Any claims arising from events prior to February 28, 2024 are clearly time-barred.[12] (*See*, *e.g.*, Doc. 7, PageID 78, 80, (alleged unlawful takings of Plaintiff's phone and vehicle in 2015 and failure to suppress evidence in prior proceedings); *id*., PageID 81 (complaints about 2017 sentencing decisions); *id*., PageID 84 (alleging arrest and incarceration in 2015 without a probable cause determination); *id*., PageID 86 (alleging that court reporter in 2014 CR 697 presented a "false" record of the transcript of Plaintiff's guilty plea colloquy when that case was on appeal); *id.*, PageID 89 (alleging Plaintiff was "extorted to pay an excessive bond in absence of forty-eight hour probable cause determination" in Municipal case 2015 CR-A-5051); *id.*, PageID 90

---

[11]Without factual elaboration, the amended complaint references Plaintiff's alleged inability "to adequately vindicate the eighth amendment excessive bond issue & the fourth amendment protection against warrantless arrest dereliction the warrant service, and the fifth amendment & fourteenth amendment rights due to process & equal protection." (Doc. 7, PageID 89). Nothing in the complaint suggest that Plaintiff was unable to pursue these claims as a result of the actions of the named Defendants.

[12]Although the statute of limitations is rarely raised on initial screening, it may be considered when the limitations bar is clear from the face of the complaint.

(alleging state defamed Plaintiff in its appellate brief during appeal of 2018 criminal conviction).

Plaintiff's amended complaint also appears to raise claims on behalf of his brother, (*see id.*, PageID 77), and possibly on behalf of an individual identified as "Kirsten Lynn Heinrich" whom he alleges "was incarcerated from 2-26-22 to 3-10-22 without probable cause & 48 hr probable cause determination." (*Id.*, PageID 84).[13] As a pro se litigant, Plaintiff may not appear in this federal court on behalf of anyone but himself. In short, Plaintiff cannot state any claim on behalf of other individuals.

### 4. Plaintiff's Amended Allegations and Claims Against Clermont County Officer Danielle Smith and Union Township Officer Bryan Taylor

Finally, the undersigned re-examines Plaintiff's newly amended allegations against Defendant Danielle Smith, who is employed by the Clermont County Sheriff's Department, and Defendant Bryan Taylor, an officer employed with the Union Township Police Department. In an abundance of caution, the Court permitted Plaintiff's originally asserted Fourth Amendment claim for prolonged detention, without a probable cause determination within 48 hours, to proceed against both Smith and Taylor in their individual capacities. But Plaintiff's amended complaint is now the operative pleading. And – despite its greatly expanded length – the amended complaint contains fewer facts and more conclusory allegations that fail to state a plausible claim against either Smith or Taylor. A brief comparison of the salient factual allegations in both the original and amended complaint reveals important distinctions.

---

[13]Plaintiff's original complaint alleges that Ms. Heinrich "enjoyed reduced charges & no conviction in the form of her statements recriminating the plaintiff and her assent as the state's witness…." (Doc. 3, PageID 39), but that allegation has been omitted from the amended complaint.

In both original and amended pleadings, Plaintiff alleges that on or about February 26, 2022 through March 10, 2022, Defendants Smith and Taylor subjected him to prolonged detention without probable cause, in violation of the Fourth Amendment. But in the original complaint, Plaintiff's claim was bolstered by a factual allegation that implied that Officer Taylor personally had effected an unlawful arrest by initiating an unlawful investigation on February 26 that "resulted in a conviction underpinned by abuse of process & false arrest, & conspiracy against rights" as well as "false imprisonment… including but not limited to all related claims grounded in all the failures associated with refusal to comply with the demand for 48 hour probable cause demand in accordance with the 4th amendment." (Doc. 3 at PageID 39, 41).[14] By omitting any reference to an arrest warrant in the original complaint, Plaintiff implied that he was falsely arrested and detained without a warrant.

In his amended complaint, Plaintiff omits the previously-implied suggestion that Defendants Smith or Taylor personally arrested him and/or that they refused to comply with a demand for a 48-hour probable cause hearing. Instead, the amended complaint admits that Plaintiff was subject to an arrest warrant in Clermont County Municipal Court No. 2022 CR A 596. Although an arrest warrant ordinarily is evidence of the existence of probable cause, Plaintiff now bases his Fourth Amendment claim of wrongful detention on his assertion that the February 28, 2022 warrant was invalid and was a "forgery", due to a discrepancy between the "numerical expression" in the statute listed in the criminal complaint and the statutory violation listed in the underlying "warrant to commit to county

---

[14]Plaintiff previously also alleged that the defendants improperly obtained "acquisition of the lab report during plaintiff's unlawful arrest, which subsequently led to plaintiff's indictment & conviction, which under ordinary circumstances would have been excluded." (*Id.*) The Court's prior ruling did not separately address that factual allegation.

jail" signed by Magistrate Bennett.[15] (Doc. 7, PageID 91). Specifically, the original complaint/affidavit in Municipal Court No. 2022 CR A 596 refers to Ohio Rev. Code 2925.03(A)(2), whereas the probable cause checklist refers to Ohio Rev. Code 2925.03, without specifying the subsection. Plaintiff alleges that the omission of the subsection amounts to a  discrepancy between the stated offenses in the charge and those in the warrant, transforming the warrant into a "forgery." (Doc. 7, PageID 91-92)[16]

To support his position, Plaintiff relies on language in *State v. Harrison*, 166 Ohio St.3d 479, 187 N.E.3d 510 (Ohio 2021) that states that a valid warrant is issued when it "expressly incorporates the complaint." In *Harrison*, the central issue was whether an *unsigned* warrant was valid. The Ohio Supreme Court held that even if unsigned by a judicial officer, an arrest warrant is valid if "(1) a court officer documents a finding of probable cause to believe that an identified criminal offense was committed by the defendant named in a sworn criminal complaint and accompanying affidavit and (2) an arrest warrant is attached to and *expressly incorporates the complaint*." *Id*. (emphasis added). Here, based on the (admittedly slight) alleged numeric discrepancy between the criminal complaint and the arrest warrant, Plaintiff claims that he was held "without a [valid] warrant & under the guise of a false document warrant to commit to County Jail.'" (*Id*., PageID 92). He also alleges that there was "no documentation of probable cause to believe that the identified criminal offense was committed by the plaintiff in the complaint by the court officer [that was flied] in a single entry in case No. 2022 CR A 546." (*Id*., PageID 91).

---

[15]Administrative Judge Anita Bechmann presided over Municipal Court No. 2022 CR A 596.
[16]The pages of the amended complaint are out of order in the electronic record of this Court. PageID 91 bears the handwritten page number "25" and PageID 92 bears the handwritten page number "24."

The referenced Municipal Court record reflects that it was Defendant D. Smith who filed the underlying charge against Plaintiff on which the arrest warrant was based.[17] Since Plaintiff alleges that Defendant Taylor illegally "trespassed" and initiated an illegal investigation on February 26, the undersigned infers (at this preliminary stage of proceedings) that Plaintiff may be alleging that Smith's sworn complaint was based on Taylor's investigation.[18] Plaintiff alleges that the signatures of the magistrate and/or clerk on the arrest warrant amounted to tampering with evidence and dereliction of duty and a wrongful determination of probable cause.

But Plaintiff is wrong because all of allegations against the magistrate or clerk rest on the false foundation of the so-called "numeric discrepancy" between the complaint and the warrant. (*Id.*) There is no legal basis to suggest that such a minor discrepancy/ error, or omission of the correct subdivision of the cited statutory offense, somehow renders the February 28, 2022 arrest warrant an invalid "forgery." To the contrary, the fact that Plaintiff appears to have been arrested pursuant to a facially valid warrant "is normally a complete defense to a constitutional claim for false arrest ... made pursuant to § 1983." *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2009) (internal footnote and additional citations omitted).

Of course, in some cases, an individual can state a claim for wrongful arrest and false imprisonment if he alleges that a police officer, either knowingly or in reckless

---

[17]Most allegations against Defendant Smith do not directly implicate her, but instead refer vaguely to unspecified "acts & omissions" of her "agents" for which Plaintiff seeks to hold Smith liable "under the doctrines of agency, joint conduct, master-servant, respondeat superior & conspiracy…." (*Id.*, PageID 71; *see also id.*, PageID 73, seeking to hold Smith liable for state law claim based on her alleged "collusion" with her "agents, servants & employees who acted under her explicit & implicit instructions and supervisions during the pertinent periods herein when she was lead detective."). To the extent that Plaintiff's allegation of Smith's "instructions" implies her personal involvement, Plaintiff does not identify what "instructions" Smith gave, to whom, when, or what precisely Smith's "agents" did.

[18]Plaintiff does not allege that Defendant Taylor actually arrested him, but that Taylor's investigation "result[ed] in arrest without probable cause…." (Doc. 7, PageID 70).

disregard for the truth, makes materially false statements in an affidavit to obtain the arrest warrant. See *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir.1989). Here, however, Plaintiff fails to identify any materially false statements knowingly made or relied upon by either Defendant Taylor or by Defendant Smith when one or both of them sought the state court warrant for Plaintiff's arrest on February 28, 2022. The closest Plaintiff gets to identifying any "false" information is a reference to a "lab report." But Plaintiff's allegations about that report are extremely vague. His amended complaint does not identify the date or nature of the report, who obtained it, when the report was obtained, how the report was obtained, why it was unlawful, or even if it was materially related to the arrest warrant.[19] *Accord*, *Hazelwood v. Keene*, No. 5:22-174-GFVT, 2023 WL 6050573, at *5 (E.D. Ky., Sept. 15, 2023) (dismissing complaint on initial screening where plaintiff failed to allege any specific false statements or omissions made in the application for the warrant that were material or necessary to the finding of probable cause).

Mostly, Plaintiff complains about the evidentiary use of the "lab report" in grand jury proceedings against him in related Case No. 2022 CR 235. Plaintiff's summation of his claim illustrates the overly vague and conclusory nature of Plaintiff's amended allegations:

> On or about 2-26-2022 to 3-10-2022, Danielle Smith and Clermont County sheriff Dept.; Bryan Taylor & Union Twp. Police Dept., knowingly used a sham legal process, while knowingly committing or facilitating the commission of an offense, using a sham legal process; to wit; dereliction of duty on order the prolonged detention of the plaintiff without probable cause with designation to make another person believe that it is lawfully issued; through the dereliction of duty, an expressly imposed law with respect to the public servant's office; apprehension without probable cause determination; and Agent Danielle Smith's reckless acquisition/investigation of the lab report, which is expressly forbidden by law with respect to the public

---

[19]In his original complaint, Plaintiff alleges that he suffered damages from a "prohibited investigative acquisition of the lab report during Plaintiff's unlawful arrest," (Doc. 3, PageID 39), but that allegation is omitted from the amended complaint.

servant's office. Tampering with evidence; purposely & knowingly with falsity and intent to deceive a public official; misrepresented the admissibility of the lab report in conspiracy with the prosecutor's office – who then invoked a grand jury inquiry knowing the evidence was inadmissible. Matthew Faris was an accessory after the fact. Bryan[] [Tayor's] trespassing invalidated the sham legal process; and John Doe & Jane Doe were accomplice to the sham legal process by dereliction of duty; failure to service a warrant.

(Doc. 7, PageID 87-88).

Based on the additional allegations in Plaintiff's amended complaint that acknowledge the existence of a warrant underlying Plaintiff's arrest and arraignment in Municipal Court on February 28, and the failure of Plaintiff to include factual allegations that would support a Fourth Amendment claim for unlawful detention against either Defendants Smith or Taylor, the undersigned now concludes that Plaintiff's amended complaint fails to state any claim against Smith or Taylor.

### III.     Conclusion and Recommendation

For the reasons stated, Defendants' motion to dismiss should be denied. But this case still should be dismissed *sua sponte* pursuant to the PLRA because Plaintiff's lengthy amended complaint fails to state any plausible claim against any Defendant. Therefore, **IT IS RECOMMENDED THAT:**

1.  Defendants' motion to dismiss on statute of limitations grounds (Doc. 12) be **DENIED**;

2.  This case be **DISMISSED** *sua sponte* in its entirety for failure to state a claim pursuant to the PLRA. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

> *s/Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RALPHIELL BRAUNSKILL,                                  Case No. 1:24-cv-140

       Plaintiff,                                              McFarland, J.
                                                        Bowman, M.J.
   v.

AGENT DANIELLE SMITH, et al.,

       Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).